Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, March 16, 2015 2:56:12 PM

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KEVIN R. DUNAWAY, ) | Case No. 14-bk-88 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |

**MEMORANDUM OPINION**

Martin P. Sheehan, the Chapter 7 trustee appointed to administer the Debtor's bankruptcy estate (the "Trustee"), objects to the Debtor's amended claim of exemptions and asks the court to prohibit the amendment based upon the application of res judicata and laches. The Debtor asserts that his amendment is permitted by Federal Rule of Bankruptcy Procedure ("Rule") 1009(a) and the Supreme Court's holding in *Law v. Siegel,* 134 S. Ct. 1188 (2014).

For the reasons stated herein, the court will overrule the Trustee's Objection to Claim of Amended Exemptions.

**I.   BACKGROUND**

On January 31, 2014, the Debtor filed his Chapter 7 voluntary petition. Among the personal property disclosed on his Schedule B, the Debtor listed his one-third membership interest in Three Guys Fitness, LLC (the "LLC"), a West Virginia limited liability company. According to the Debtor, the debt owed by the LLC effectively caused his one-third interest to have nominal value, which he scheduled at $100. Similarly, on his Schedule C – Property Claimed as Exempt, the Debtor valued his interest in the LLC at $100 and claimed the same value as exempt under § 38-10-4(e) of the West Virginia Code.[1] Notably, the Debtor only

---

[1] The Debtor actually exempted his interest generally under W. Va. Code § 38-10-4, but because the available exemptions under West Virginia's bankruptcy exemption scheme are found specifically in the subsections thereof, the court presumes that the Debtor claimed his exemption under subsection (e), which is commonly referred to as the "wildcard" exemption.

1

claimed $3,600 of his available exemption under subsection (e), leaving $8,200 of potential exemptions available to him.[2] The Trustee did not object to the Debtor's claimed exemptions, and on March 17, 2014, he indicated that the bankruptcy estate did not have assets available for liquidation and distribution to creditors in this case. On May 12, 2014, however, the Trustee withdrew his "no-asset" report and requested that the Clerk of Court issue notice to creditors to file proofs of claim no later than August 12, 2014. On November 3, 2014, after the Trustee filed his Report of Sale regarding his sale of the Debtor's one-third interest in the LLC for $15,000, the Debtor filed amended Schedules B and C. On his amended Schedule B, the Debtor valued his one-third interest in the LLC at $8,300. On his amended Schedule C, the Debtor again valued his one-third interest at $8,300 and used his previously-unclaimed "wildcard" exemption of $8,200 to increase the amount of his claimed exemption in his one-third interest in the LLC from $100 to $8,300.

## II. DISCUSSION

The Trustee asserts that the court should disallow, based upon the application of res judicata and laches, the Debtor's amended claim of exemptions. He asserts that Rule 1001 requires such a result given its mandate that the Rules "be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Rule 1001. Additionally, he asserts that the Debtor's original claim of exemptions implicitly became final by the time he proposed to sell the Debtor's one-third interest in the LLC. In that regard, the Trustee asserts that he relied upon the Debtor's claimed exemption of $100 when he invested time and effort into selling the asset for the benefit of the bankruptcy estate's creditors, who he asserts were also entitled to rely on the state of the record at that time in determining whether the proposed sale was in their respective best interests.[3]

On August 28, 2014, the court disposed of an issue substantially similar to the one raised in this case. *See In re Scotchel*, No. 12-09, 2014 WL 4327947 (Bankr. N.D.W. Va. Aug. 28,

---

[2] Because the Debtor claimed a $14,000 exemption in his residence under W. Va. Code § 38-10-4(a), he was left with $11,800 to claim property as exempt under the "wild card" exemption. *See* W. Va. Code § 38-10-4(e) (making available as the "wildcard" exemption $800 plus any unused exemption provided for by §38-10-4(a)). $11,800 - $3,600 = $8,200.

[3] Neither Mr. Sheehan's Motion to Sell Property nor the court's order authorizing the sale make any representation to the creditor body regarding an anticipated dividend to be received by them based on the sale.

2014). In *Scotchel*, the debtor originally valued his interest in an asset of the bankruptcy estate at $1.00 and claimed an exemption therein in the amount of $1.00. He asserted that, to the extent the asset belonged to the bankruptcy estate, his exemption effectively exempted from the bankruptcy estate 100% of the value of the asset. *Scotchel*, 2014 WL 4327947 at *1. The trustee is *Scotchel*, who is the Chapter 7 trustee here also, objected to Mr. Scotchel's claimed exemption and argued that the Supreme Court's holding in *Schwab v. Reilly*, 560 U.S. 770 (2010), precluded such an outcome. *Id.* Ultimately, the court issued an order dated October 16, 2012, that sustained the Trustee's objection to the extent that *Schwab* prohibits a debtor from exempting, in the face of a timely objection, 100% of the fair market value of certain property of the estate. *Id.* Mr. Scotchel subsequently amended his claimed exemption more than two years postpetition and after the Trustee had made significant interim distributions and otherwise acted under the belief that the court limited Mr. Scotchel's exemption to $1.00. *Id.* at *2.[4] The Trustee thus objected and argued that the court should disallow Mr. Scotchel's amended exemption based upon either res judicata or equitable considerations of Mr. Scotchel's bad faith and the resultant prejudice to creditors. *Id.*

In overruling the Trustee's objection to Mr. Scotchel's amended claim of exemption based on res judicata, the court agreed with Mr. Scotchel that nothing in its order dated October 16, 2012, precluded him from amending his claimed exemptions because the issue finally resolved by that order was the effect of Mr. Scotchel's formerly-claimed exemption of $1.00. *Id.* at *3. The court also found that the record before the court did not support the Trustee's contention that Mr. Scotchel somehow waived his ability to amend his claimed exemption. *Id.* n.5. Regarding the Trustee's objection to Mr. Scotchel's amended claim of exemption based upon equitable considerations of bad faith and prejudice to creditors, the court likewise found his argument to be unpersuasive. Specifically, the court followed the "emerging view" interpreting the Supreme Court's decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), as having explicitly abrogated cases decided before it that held that a court could disallow a debtor's exemption or amended exemption based upon equitable considerations.

---

[4] Notably, Mr. Scotchel's amended claim of exemptions took advantage of a theretofore unused portion of his exemption available under W. Va. Code § 38-10-4(e)—the same action taken by the Debtor in this case.

Because the facts of this case and the Trustee's objection to the Debtor's amended claim of exemptions are substantially similar to *Scotchel*, the court will not depart from its holding in that case. In fact, the court finds the Trustee's arguments here to be less persuasive than those raised in *Scotchel* based upon the facts of this case. More specifically, the Trustee objects to the Debtor's amended claim of exemptions based upon res judicata but acknowledges that, unlike in *Scotchel*, the court has not yet issued any ruling regarding the Debtor's original claim of exemptions or his amended exemptions. He nonetheless argues that the original claim of exemptions became final, at least implicitly and pragmatically, by the time he solicited proofs of claim in this case and sought to liquidate the Debtor's one-third interest in the LLC for the benefit of creditors. He therefore urges the court to disallow the Debtor's amended claim of exemptions because he and the creditors were entitled to rely upon the Debtor's claimed exemptions at the time the court adjudicated his proposed sale of the Debtor's one-third interest in the LLC; essentially a res judicata-prejudice to creditors hybrid argument.

The court finds his argument in that regard unpersuasive and will overrule his objection to the Debtor's amended claim of exemptions based upon res judicata. Although the Trustee acknowledges that this court has not yet entered any order in this case regarding the Debtor's claimed exemptions, he asserts that the court should employ what he terms as "administrative res judicata" in a situation like this where the exemptions "became final" after no party in interest timely objected to the Debtor's claimed exemptions. Even assuming that is true—that the Debtor's claimed exemptions "became final" thirty days after he claimed them and nobody objected—all that became final was the Debtor's $100 claimed exemption of his one-third interest in the LLC. Nothing in the Bankruptcy Code or Rules precludes a debtor from amending his claimed exemptions, particularly in a case like this where he did not exhaust his available exemptions on his initial Schedule C. *See* Rule 1009(a) (noting that a debtor may generally amend his petition or schedules, including Schedule C, at any time before the case is closed). To the extent that the Trustee asserts that Rule 1001 requires a different result "to secure the just, speedy, and inexpensive determination of every case and proceeding," the court does not believe permitting the Debtor's amended claim of exemptions here is at odds with the goal of Rule 1001, particularly given the ensuing analysis.

Regarding the Trustee's argument that the court should employ the doctrine of laches to disallow the Debtor's amended claim of exemptions, he argues that the doctrine is not an

4

equitable one but is an established principle of law. He thus asserts that the Court's holding in *Law v. Siegel* does not preclude, as determined by the court in *Scotchel*, this court's use of res judicata, laches, estoppel, or similar principles to disallow the Debtor's amended claim of exemptions. The court, however, is unpersuaded.[5] Notably, "laches" is defined as "2. The *equitable doctrine* by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." *Black's Law Dictionary* 1006 (10th ed. 2014) (emphasis added). And "estoppel by laches" is similarly defined as "[a]n *equitable doctrine* by which some courts deny relief to a claimant who has unreasonably delayed or been negligent in asserting a claim." *Id.* at 668 (emphasis added). The court thus finds that laches is nothing other than an equitable doctrine, which this court cannot employ to restrict the Debtor's otherwise unfettered ability to amend his claimed exemptions "*at any time* before his case is closed." Rule 1009(a) (emphasis added). Moreover, even if the court were to employ the doctrine of laches in this case, it cannot find the Debtor's timing of his amended claim of exemptions here constitutes an "unreasonable delay," which is at the heart of laches. In that regard, the Trustee withdrew his "no-asset" report on May 12, 2014 and moved to sell the Debtor's one-third interest in the LLC on July 21, 2014. The Debtor contested the Trustee's motion and filed a motion, which he later withdrew, to voluntarily dismiss his case. Ultimately, the court granted the Trustee's Motion to Sell on October 2, 2014, and the Trustee filed his Report of Sale on October 21, 2014. The Debtor amended his claimed exemptions less than fourteen days later. Less than six months passed from the day The Trustee

---

[5] In addition to the court's rejection of the Trustee's specific objections in this case, the court is similarly unpersuaded by the Trustee's general assertion that neither estoppel nor laches "is a 'general equitable power' unavailable to the Bankruptcy Court post-*Law v. Siegel* . . . ." In that regard, the Supreme Court noted that "[t]he Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." *Law v. Siegel*, 134 S. Ct. at 1196 (citation omitted). The court therefore finds that it can only disallow an exemption or amended exemption if the statutory scheme creating the exemption also provides the basis for disallowing it. The Supreme Court did note, however, that a debtor employing a state-created exemption may be precluded by state law from claiming or amending an exemption if the state law provided for such prohibition in certain contexts involving debtor misconduct. *See Law*, 134 S. Ct. at 1196-97 (citation omitted) ("It is true of course that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provided that certain types of debtor misconduct warrant denial of the exemption."). Mr. Sheehan has not articulated such a basis, and the court is aware of none, to disallow the Debtor's amended exemption in this case.

5

withdrew his "no-asset" report until the day that the Debtor amended his claimed exemptions. The court thus finds no unreasonable delay on the Debtor's part in amending his claimed exemptions.

### III.   CONCLUSION

Based upon the foregoing analysis and in accordance with Rule 7052, made applicable to this matter by Rule 9014(c), the court will enter a separate order overruling the Trustee's Objection to Claim of Amended Exemptions.